Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York                          1:20-cv-06878

| | |
|---|---|
| Johnnie Bynum, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Family Dollar Stores, Inc., | |
| Defendant | |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Family Dollar Stores, Inc. ("defendant") manufactures, distributes, markets, labels and sells almonds purporting to obtain their flavor through actually being smoked, under the Eatz brand ("Product").

2.      The Product is available to consumers from defendant's retail stores – over 8,000 locations in the United States – and is sold in sizes including bags of 7 OZ (198g).

3.      The Product's relevant front label representations include "Eatz," "Smoked Almonds," a red color scheme and an image of the food.



4.     The label makes direct representations that the Product's primary recognizable flavor is "smoke," through the statement "Smoked Almonds" and the red color scheme evocative of fire used in actual smoking, such that smoke is reasonably understood by consumers to be its characterizing flavor. *See* 21 C.F.R. § 101.22(i).

5.     Smoking is a method of preparation and preservation where a food is cooked over a fire containing various kinds of wood chips.

6.     Different wood chips provide different flavors.

7.     For example, hickory wood chips – from deciduous hardwood trees of the genus *Carya* – are often used for providing hearty yet sweet flavors to nuts and meat ("hickory").

8.      Consumers prefer foods that are flavored from their characterizing food ingredient or through their natural production process, as opposed to foods which are flavored by the essential oil and extractives that provide these qualities, for reasons including nutrition, health and/or the avoidance of additives and highly processed ingredients.

9.      Foods labeled "strawberry shortcake," "smoked almonds" and "apple pie" are expected by consumers to get their flavor from strawberries, actual smoking and apples. *See* 21 C.F.R. § 101.22(i)(1) ("If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla', in letters not less than one-half the height of the letters used in the name of the food, except that…").

10.      Because the front label contains no qualification such as flavor, flavored, natural smoke flavor, artificial smoke flavored, no reasonable consumer would be so distrustful or skeptical of the "Smoked Almonds" description to verify whether the ingredient list disclosed a "natural smoke flavor." *See* 21 C.F.R. § 101.22(i)(1) (describing a food which contains no simulating artificial flavor and not subject to 21 C.F.R. § 101.22(i)(1)(i)-(iii)).

11.      Smoked almonds that get their smoked taste from being smoked are not a rare or pricy delicacy that would make a reasonable consumer "double check" the veracity of the front label claims.

12.      However, the Product is misrepresented as "smoked almonds," because the listing of "Natural Smoke Flavor" on the ingredient list means their flavor is not from actual smoking but from added flavor.



**INGREDIENTS:** ALMONDS ROASTED IN PEANUT, AND/OR COTTONSEED, AND/OR SUNFLOWER SEED, AND/OR CANOLA OIL PROTEIN, HYDROLYZED SOY PROTEIN, DEXTROSE, TORULA YEAST, SALT, ONION POWDER, <mark>NATURAL SMOKE FLAVOR</mark>, SPICE EXTRACTIVES, DISODIUM INOSINATE AND DISODIUM GUANYLATE.

13.     Even if consumers were to view the ingredient list, a reasonable consumer would have no reason to know that the listing of "natural smoke flavor" forecloses the possibility the Product was also subject to smoking.

14.     However, the Product's taste is not provided through any smoke treatment, despite the front label claim of "Smoked Almonds," which is deceptive and misleading to consumers.

15.     Competitor smoked almond products are labeled as accurately being flavored by smoke flavor as opposed to being smoked.

Competitor                              Defendant

 

16.     The competitor product is labeled as "Smoked Almonds" but prominently discloses its smoked taste is from added smoked flavor due to the "Naturally Flavored" statement.

17.     Defendant's Product contains no such front label disclosure, causing reasonable consumers to purchase them instead of similar products, at premium prices.

18.     Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

19.     The Product contains other representations which are misleading and deceptive.

5

20.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $1.00 per bags of 7 OZ (198g), excluding tax, compared to other similar products represented in a non-misleading way and higher than plaintiff and consumers would pay in the absence of the challenged representations.

<u>Jurisdiction and Venue</u>

21.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

22.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

23.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

24.     This is a reasonable assumption because the Product is sold in thousands of stores in this and other states and have been sold bearing the allegedly misleading claims for several years.

25.     Plaintiff Johnnie Bynum is a citizen of New York.

26.     Defendant is a Delaware corporation with a principal place of business in Chesapeake, Chesapeake City County, Virginia and is a citizen of Virginia.

27.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

28.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

29.     A substantial part of events and omissions giving rise to the claims occurred in this District.

6

Parties

30.    Plaintiff Johnnie Bynum is a citizen of New York, Bronx County, New York.

31.    Defendant Family Dollar Stores, Inc. is a Delaware corporation with a principal place of business in Chesapeake, Virginia, Chesapeake City County.

32.    Defendant operates over 8,000 variety stores across New York and the United States.

33.    Defendant's stores sell household goods, decorations, food, pet supplies and numerous other types of merchandise.

34.    During the relevant statutes of limitations, plaintiff purchased the Product within his district and/or State for personal and household use or consumption in reliance on the representations the Product's smoked taste was from being smoked and not from smoke flavor.

35.    Plaintiff purchased the Product on one or more occasions during the relevant period, including in and/or around August 2019, at Defendant's stores, including at 939 E Tremont Ave Bronx NY 10460-4305.

36.    Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use or consumption.

37.    Plaintiff was deceived by and relied upon the Product's deceptive labeling.

38.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

39.    The Product was worth less than what Plaintiff paid for it and he would not have paid as much absent Defendant's false and misleading statements and omissions.

40.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's ingredients – which may involve changes to the front label flavor designation or the composition of the Product.

Class Allegations

41.     The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

42.     Plaintiff will seek class-wide injunctive relief based on Rule 23(b) in addition to monetary relief class.

43.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

44.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

45.     Plaintiff is an adequate representatives because his interests do not conflict with other members.

46.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

47.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

48.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

49.     Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>(Consumer Protection Statute)</u>

50.     Plaintiff incorporates by reference all preceding paragraphs.

51.     Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

52.     Defendant's acts and omissions are not unique to the parties and have a broader

impact on the public.

53.     Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

54.     Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product is smoked and gets its flavor through the smoking process as opposed to having added "smoke flavor."

55.     Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

56.     Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

57.     Plaintiff incorporates by reference all preceding paragraphs.

58.     Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

59.     Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product gets its smoke taste (flavor) from being smoked as opposed to added smoke flavor.

60.      Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

61.     This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

62.     The representations took advantage of consumers' (1) cognitive shortcuts made at

the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

63.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

64.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

65.    Plaintiff incorporates by reference all preceding paragraphs.

66.    The Products were manufactured, labeled and sold by defendant and warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not, *viz*, were smoked.

67.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

68.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

69.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

70.    Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years.

71.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

72.    Plaintiff and class members would not have purchased the Products or paid as much

if the true facts had been known, suffering damages.

<u>Fraud</u>

73.   Plaintiff incorporates by reference all preceding paragraphs.

74.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product gets its smoke taste (flavor) from being smoked as opposed to added smoke flavor.

75.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate.

76.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

77.   Plaintiff incorporates by reference all preceding paragraphs.

78.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.   Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2.   Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.   Injunctive relief to remove, correct and/or refrain from the challenged practices and

representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   August 25, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-06878
United States District Court
Southern District of New York

Johnnie Bynum, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Family Dollar Stores, Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
   60 Cuttermill Rd Ste 409
   Great Neck NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: August 25, 2020

/s/ Spencer Sheehan
Spencer Sheehan