| | |
|---|---|
| United States District Court<br>Southern District of New York | 1:20-cv-06878-MKV |
| Johnnie Bynum, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   - against -<br><br>Family Dollar Stores, Inc.,<br><br>        Defendant | First Amended<br>Class Action Complaint |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.    Family Dollar Stores, Inc. ("Defendant") manufactures, distributes, markets, labels, and sells almonds purporting to obtain their flavor through being smoked under the Eatz brand ("Product").

2.    The Product is available to consumers from Defendant's retail stores – over 8,000 locations in the United States – and is sold in sizes including bags of 7 OZ (198g).

3.    The relevant front label representations include "Smoked Almonds," a red color scheme and an image of the almonds.



4. Smoking is a processing method to preserve or improve the flavor of food by exposing it to smoke, usually from burning wood.

5. The drying action of the smoke and the different phenol compounds present in wood smoke helps to preserve the protein-rich foods such as meat, cheese, almonds, and fish.

6. While the popularity of smoking decreased in the mid-20th century due to the introduction of "convenient" chemical preservatives, the last two decades have seen a resurgence in smoked foods, as consumers embrace foods made without advanced chemistry and synthetic ingredients.

7. Consumers prefer foods that are flavored from their characterizing food ingredient or a natural production process – being smoked – instead of having added flavor.

8. An increasing number of consumers avoid highly processed foods with added flavors for reasons including nutrition, health and the avoidance of additives and highly processed ingredients.

9. Whether a food is flavored by "smoke flavor" or from being smoked is information consumers rely on when making quick purchasing decisions at the grocery store. 21 C.F.R. § 101.22(i)(1).

10. Consumers avoid products with smoke flavor added because it contains numerous additives and has been associated with detrimental health effects.

11. Because the front label contains no qualification such as "smoked flavor," "natural smoke flavor," or "naturally flavored," no reasonable consumer would be so distrustful or skeptical to verify the truthfulness of this claim. See 21 C.F.R. § 101.22(i).

12. "The rule [21 C.F.R. § 101.22(i)] is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two. This consumer protection objective is relevant to taste claims conveyed in advertising as well."[1]

13. Smoked almonds that get their smoked taste from being smoked are not a rare or pricy delicacy that would make a reasonable consumer "double check" the veracity of the front label claim.

---

[1] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.

14. However, the Product is misrepresented as "Smoked Almonds" because the listing of "Natural Smoke Flavor" on the ingredient list means it contains "smoke condensed into a liquid form" instead of from being smoked.[2]



**INGREDIENTS:** ALMONDS ROASTED IN PEANUT, AND/OR COTTONSEED, AND/OR SUNFLOWER SEED, AND/OR CANOLA OIL PROTEIN, HYDROLYZED SOY PROTEIN, DEXTROSE, TORULA YEAST, SALT, ONION POWDER, <mark>NATURAL SMOKE FLAVOR</mark>, SPICE EXTRACTIVES, DISODIUM INOSINATE AND DISODIUM GUANYLATE.

15. Consumers are misled because the front label fails to tell them the almonds are merely "Natural Smoke Flavored Almonds" or "Naturally Flavored" – in violation of the requirements of federal and state law. 21 U.S.C. § 343(i); 21 C.F.R. § 101.22(i)(1)(i).

16. Competitor products are truthfully and non-deceptively identified as having added smoke flavor - "Naturally Flavored" - where consumers can easily see it.

---

[2] Matthew Sedacca, Liquid Smoke: The History Behind a Divisive Culinary Shortcut – Barbecue's love/hate relationship with the manufactured flavor, Eater.com, Jun 15, 2016.



17. The FDA has warned companies that fail to accurately inform consumers of foods which are not smoked but only have added smoke flavor:

> If these smoke ingredients [natural smoke flavor] are added flavors, they should be declared in accordance with 21 CFR 101.22 [on the front of the label]; however, if these ingredients describe the smoking process, then they must not be listed as ingredients in the ingredient statement.[3]

18. Even if consumers viewed the ingredient list, they would have no reason to know that listing "Natural Smoke Flavor" forecloses the possibility the Product was subject to at least some smoking.

19. However, the Product has not undergone any smoking and all the smoked taste is from added smoke flavor.

---

[3] FDA Warning Letter, Smoked Seafood, Inc. dba Little Mermaid Smokehouse, MARCS-CMS 515739 — JUNE 27, 2017.

5

20. The 400 flavor compounds which contribute to a "smoked taste" include lactones, pyrazines, aliphatic, aromatic hydrocarbons, alcohols, organic acids, esters, furans, phenols, carbonyl and noncarbonyl compounds, and various oxygen- and nitrogen-containing heterocyclic compounds.

21. Added smoke flavor is unable to impart the same, real smoked taste of real smoking.

22. First, the Product's added smoke flavor fails to duplicate the smoked taste from smoking, based on laboratory analysis revealing the absence of phenolic compounds in threshold amounts – 2,3-Butanedione, 2,3-Pentanedione, 3-Butanoic acid, 3-Methylbutanoic acid, 4-Ethylguaiacol, 4-Propylguaiacol and/or 4-Vinylguaiacol.

23. Second, the smoke generation process dramatically influences the wood-smoke chemical composition, generating compounds that are not capable of being included in a "natural smoke flavor," like trans-isceugenol and 4-methylsyringol.

24. When foods like almonds are exposed to volatiles and particulate matter found in smoke, they undergo chemical reactions which form new flavor compounds.

25. Third, certain compounds only serve as intermediates in the formation of more stable forms of compounds which are essential to the aroma of smoke.

26. Fourth, in most systems involving only smoke generation instead of smoking food, there is only a focus on volatile compounds which are believed to have distinctive odor properties at low concentrations.

27. This overlooks that nonvolatile compounds may also make significant contributions to smoke flavor.

28. Defendant's branding, marketing and packaging of the Product is designed to – and does – deceive, mislead, and defraud Plaintiff and consumers.

29. The amount and presence of real smoked flavor from smoking is material to Plaintiff and consumers.

30. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

31. The value of the Product that Plaintiff purchased and consumed was materially less than its value as represented by Defendant.

32. Had Plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

33. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $1.00 per bags of 7 OZ (198g), excluding tax, compared to other similar products represented in a non-misleading way and higher than Plaintiff and consumers would pay in the absence of the challenged representations.

## Jurisdiction and Venue

34. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

35. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

36. Plaintiff Johnnie Bynum is a citizen of New York.

37. Defendant is a Delaware corporation with a principal place of business in Chesapeake, Chesapeake City County, Virginia and is a citizen of Virginia.

38. Minimal diversity exists because Plaintiff Johnnie Bynum and Defendant are citizens of different states.

39. Upon information and belief, sales of the Product and any available statutory and

other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

40. Venue is proper because Plaintiff and many class members reside in this District and defendant does business in this District and State.

41. This court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

42. A substantial part of the events or omissions giving rise to the claim occurred in this District.

## Parties

43. Plaintiff Johnnie Bynum is a citizen of Bronx, Bronx County, New York.

44. Defendant Family Dollar Stores, Inc. is a Delaware corporation with a principal place of business in Chesapeake, Virginia, Chesapeake City County.

45. Defendant operates over 8,000 variety stores across the United States.

46. Defendant's stores sell household goods, decorations, food, pet supplies and numerous other types of merchandise.

47. Plaintiff purchased the Product on one or more occasions during the relevant period, including in and/or around August 2019, at Defendant's stores, including at 939 E Tremont Ave Bronx NY 10460-4305.

48. Plaintiff bought the Product at or exceeding the above-referenced price because he sought to consume almonds that were purportedly smoked and relied upon its front label representations.

49. Plaintiff was deceived by and relied upon the Product's deceptive labeling and marketing.

50. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions or would have paid less for it.

51. The Product was worth less than what Plaintiff paid for it and he would not have paid as much absent Defendant's false and misleading statements and omissions.

52. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components and attributes.

## Class Allegations

53. The class will consist of all purchasers of the Product who reside in New York, Rhode Island, Maine, Idaho, Wyoming, Iowa and South Carolina during the applicable statutes of limitations.

54. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

55. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

56. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

57. Plaintiff is an adequate representative because his interests do not conflict with other members.

58. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

59. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

60. Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

61.   Plaintiff seeks class-wide injunctive relief because the practices continue.

## New York General Business Law ("GBL") §§ 349 & 350

62.   Plaintiff incorporates by reference all preceding paragraphs.

63.   Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers.

64.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

65.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product is at least somewhat smoked and gets some of its flavor through smoking as opposed to only having added "smoke flavor."

66.   Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

67.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

68.   Plaintiff incorporates by reference all preceding paragraphs.

69.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product gets its smoke taste (flavor) from being smoked as opposed to added smoke flavor.

70.   Defendant had a duty to disclose the absence of the characterizing feature – being smoked on the front label as part of the Product's name to not mislead consumers who do not scrutinize the ingredient list, and who would not even learn from the ingredient list the Product had not been smoked at all.

71. This duty is based on Defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

72. The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in Defendant, a well-known and respected brand in this sector.

73. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

74. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

75. Plaintiff incorporates by reference all preceding paragraphs.

76. The Product was manufactured, labeled and sold by Defendant and warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, health, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not, *viz*, were smoked.

77. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

78. This duty is based, in part, on Defendant's position as one of the most recognized companies in the nation in this sector.

79. Plaintiff provided or will provide notice to Defendant, its agents, representatives, and their employees.

80. Defendant received notice and should have been aware of these misrepresentations

due to numerous complaints by consumers to its main office over the past several years regarding the Product or those of the type described here.

81. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

82. The Product was not merchantable because it could not pass as acceptable in the trade for smoked almonds since it was not smoked but had added smoke flavor.

83. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

84. Plaintiff incorporates by reference all preceding paragraphs.

85. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product gets its smoke taste (flavor) from being smoked as opposed to added smoke flavor.

86. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate.

87. Defendant was motivated by increasing its market share against competitor products.

88. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

89. Plaintiff incorporates by reference all preceding paragraphs.

90. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

    **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages under the GBL and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 24, 2021

    Respectfully submitted,

    Sheehan & Associates, P.C.
    /s/Spencer Sheehan
    Spencer Sheehan
    60 Cutter Mill Rd Ste 409
    Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
    *spencer@spencersheehan.com*
    E.D.N.Y. # SS-8533
    S.D.N.Y. # SS-2056

1:20-cv-06878-MKV
United States District Court
Southern District of New York

Johnnie Bynum, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Family Dollar Stores, Inc.,

Defendant

First Amended Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: February 24, 2021

/s/ Spencer Sheehan<br>Spencer Sheehan