UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #:_____             │
│ DATE FILED:___3/21/2022___        │
└──────────────────────────────────┘
```

JOHNNIE BYNUM, individually and on behalf of all others similarly situated,

 Plaintiffs,

 -against-

FAMILY DOLLAR STORES, INC.,

 Defendant.

1:20-cv-06878 (MKV)

**OPINION AND ORDER
GRANTING MOTION TO
DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Johnnie Bynum brings this putative class action against Defendant Family Dollar Stores, Inc., for violations of the New York General Business Law ("GBL") sections 349 and 350, and other common law claims. (First Amended Complaint ("FAC") [ECF No. 14]).

Defendant has moved to dismiss Plaintiff's FAC. [ECF No. 19]. In support of its motion, Defendant submits a memorandum of law, (Def. Br. [ECF No. 22]), the declaration of Trent S. Dickey, counsel for Defendant, with an attached exhibit, (Dickey Decl. [ECF No. 20]), and the declaration of Anna Irvin, counsel for Defendant, (Irvin Decl. [ECF No. 21]). Plaintiff has filed a memorandum of law in opposition to Defendant's motion, (Pl. Opp'n [ECF No. 23]), and Defendant has replied, (Def. Reply [ECF No. 26]).

Having carefully considered the parties' arguments, the Court grants Defendant's motion and dismisses the FAC.

## BACKGROUND

### I.    Factual Background

The facts are taken from the FAC, and are accepted as true for the purposes of this motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Defendant

1

Family Dollar Stores, Inc. manufactures, distributes, markets, labels, and sells 7-ounce bags of Eatz "smoked almonds" (the "product"). (FAC ¶ 1). Plaintiff alleges that he purchased the product from a Family Dollar store in the Bronx. (FAC ¶¶ 1–2, 47). The packaging for the almonds includes an image of the almonds, a red color scheme, and the words "Smoked Almonds." (FAC ¶ 3). The ingredients list on the back of the package states that the package contains "ALMONDS *ROASTED* IN PEANUT, AND/OR COTTONSEED, AND/OR SUNFLOWER SEED, AND/OR CANOLA OIL . . . [and] NATURAL SMOKE FLAVOR." (FAC ¶ 14) (emphasis added).

Plaintiff alleges that the use of the word "smoked" on the front label of the product deceived him into believing that the product obtained its flavoring from a natural smoking process. (FAC ¶¶ 18–19, 28). As Plaintiff alleges, the ingredients list on the back of the product's packaging confirms that the product does not obtain any flavoring from a natural smoking process. (FAC ¶¶ 14, 18). Instead, according to the FAC, the product merely contains "natural smoke flavor," or "smoke condensed into a liquid form." (FAC ¶¶ 14, 18). Plaintiff alleges that almonds subjected to real smoking taste different from almonds that merely have "added smoke flavor." (FAC ¶¶ 20–27). Plaintiff alleges that had he known that the product only was flavored with added "natural smoke flavor," he would not have purchased the product or would have paid less for it. (FAC ¶¶ 30–33).

## II.   Procedural History

Plaintiff commenced this case with the filing of his original Complaint. (Compl. [ECF No. 1]). With leave of Court, Plaintiff thereafter filed the FAC. (FAC).

The FAC asserts five causes of action: (1) a claim under GBL sections 349 and 350, (2) negligent misrepresentation, (iii) breaches of express warranty, implied warranty of

merchantability and Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2310, *et seq.*, (iv) fraud, and (v) unjust enrichment.  (FAC ¶¶ 62–90).  Plaintiff seeks injunctive relief, monetary damages, statutory damages, and attorneys' fees.  (FAC ¶ 13).

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alterations, internal quotation marks, and citations omitted).

When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, the Court must limit our consideration to the factual allegations in the amended complaint, "which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

**DISCUSSION**

This case is the latest in a long string of putative class actions brought under the same theories of recovery by the same lawyer alleging that the packaging on a popular food item is false and misleading.[1]  Almost all these putative class actions have been dismissed at the pleadings stage for a failure to state a claim.  Here, Plaintiff brings five causes of action, all premised on the contention that the description "Smoked" on the product's label misleads consumers into believing that the flavoring of the product is derived from at least some smoking as opposed to added smoke flavoring.  (FAC ¶ 65).  Since all five causes of action are premised on this same contention, if there is no material misrepresentation, none of Plaintiff's causes of action can survive this Motion.  *See*, *e.g.*, *Cosgrove*, 2020 WL 7211218, at *3 (explaining that because the plaintiffs' causes of action—identical to those here—were "all premised on the same contention" that the defendant's labeling of the product was materially misleading, if the defendant's product "does not mispresent the contents of the container as a matter of law, [then] all of [the] [p]laintiffs' claims must be dismissed"); *Dashnau*, 529 F. Supp. 3d at 241 (same).

## I.  Plaintiff Fails To State A Claim Under New York General Business Law sections 349 and 350

GBL section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," and section 350 prohibits "[f]alse advertising in the conduct of any

---

[1] *See*, *e.g.*, *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (vanilla-flavored ice cream dessert bars); *Mazella v. Coca-Cola Co.*, No. 7-20-CV-05235-NSR, 2021 WL 2940926, at *1 (S.D.N.Y. July 12, 2021) ("Slightly Sweet" iced tea); *Cosgrove v. Oregon Chai, Inc.*, No. 19-CV-10686, 520 F.Supp.3d 562, 581–88 (S.D.N.Y. Feb. 21, 2021) (vanilla-flavored chai tea); *Wallace v. Wise Foods, Inc.*, No. 20-CV-6831 (JPO), 2021 WL 3163599, at *1 (S.D.N.Y. July 26, 2021) (Wise's "Cheddar & Sour Cream Flavored" chips); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160–68 (S.D.N.Y. Feb. 11, 2021) (vanilla-flavored soymilk); *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2–7 (S.D.N.Y. Jan. 19, 2021) (vanilla-flavored almond milk); *Barreto v. Westbrae Nat., Inc.*, 518 F.Supp.3d 795, 800–09 (S.D.N.Y. Jan. 7, 2021) (vanilla-flavored soymilk); *Cosgrove v. Blue Diamond Growers*, No. 19-CV-8993, 2020 WL 7211218, at *3–5 (S.D.N.Y. Dec. 7, 2020) (vanilla-flavored almond milk); *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493, 2020 WL 6323775, at *2–6 (S.D.N.Y. Oct. 27, 2020) (vanilla-flavored protein drink); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50–51 (S.D.N.Y. 2020) (vanilla-flavored ice cream).

business, trade or commerce."  GBL §§ 349–50.  To successfully assert a claim under either

section, a plaintiff must allege that a defendant has engaged in "(1) consumer-oriented conduct

that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly

deceptive act or practice."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing

*Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 967 N.E.2d 675, 675 (N.Y. 2012)).

The allegedly deceptive acts or representations must be misleading to "a reasonable consumer."

*Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324, 774 N.E.2d 1190 (N.Y. 2002)

Although the question of whether a business practice or advertisement is misleading to the

reasonable consumer is generally a question of fact, *see Hidalgo v. Johnson & Johnson*

*Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015), it is "well settled that a court

may determine as a matter of law that an allegedly deceptive advertisement would not have

misled a reasonable consumer," *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

Plaintiff must do more than plausibly allege that a label might conceivably be misunderstood by

some few consumers.  "Instead, Plaintiff[] must plausibly allege that a significant portion of the

general consuming public or of targeted consumers, acting reasonably in the circumstances,

could be misled."  *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 676 (S.D.N.Y. 2021)

(quoting *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021)).

Defendant argues that Plaintiff's FAC should be dismissed because the product's

allegedly deceptive label would not mislead a reasonable customer.  Defendant asserts that a

reasonable consumer who saw the packaging would look to the language on the back of the

package to clarify whether the product was smoked.  (Def. Br. 12).  Defendant argues that on the

back of the package, the ingredient list clearly discloses that the product was not made by

smoking, but was "roasted" and merely flavored with "Natural Smoked Flavor."  (*See* FAC

5

¶ 14).  Plaintiff contends that this argument is foreclosed by the Second Circuit's opinion in *Mantikas v. Kellogg*, 910 F.3d 633 (2d Cir. 2018).  (Pl. Opp'n 10).

In *Mantikas*, the Second Circuit held that a plaintiff had sufficiently alleged that the label on a box of Cheez-It crackers was misleading when it said "made with whole grain," despite the fact that the crackers contained more white flour than whole wheat flour.  910 F.3d at 634.  The Second Circuit held that the mere fact that the crackers did contain some whole grain was insufficient to defeat the lawsuit, because the box's bold-faced "Made With Whole Grain" claim arguably "communicate[d] to the reasonable consumer that the grain in the product [was] predominantly, if not entirely, whole grain."  *Id.* at 637.  Moreover, it was irrelevant to the analysis that the ingredient list on the back of the box clarified that enriched white flour was the predominant ingredient, since "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box."  *Id.*

Plaintiff argues that under *Mantikas*, Defendant cannot cite to the clarifying language on the back of the package to defeat it's claim that the front labelling of the product is misleading. However, in *Mantikas*, the Second Circuit specifically held that the language "Made With Whole Grain," as used on the packaging of the product in that case, was misleading to reasonable consumers.  Since *Mantikas*, courts in this Circuit have reasoned that "[i]f a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion," the Court should inquire as to whether the allegedly misleading element is instead merely ambiguous.  *Sarr v. BEF Foods, Inc.*, No. 18CV6409ARRRLM, 2020 WL 729883, at *4 (E.D.N.Y. Feb. 13, 2020) (quoting *Reyes v. Crystal Farms Refrigerated Distribution Co.*, No. 18CV2250NGGRML, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019)).  If so, "the

6

clarification can defeat the claim." *Id.* (quoting *Reyes*, 2019 WL 3409883, at *3); *see*, *e.g.*, *Melendez v. ONE Brands, LLC*, No. 18CV06650CBASJB, 2020 WL 1283793, at *7 (E.D.N.Y. Mar. 16, 2020) ("[A]ny potential ambiguity created by the front label regarding the bars' carbohydrate and caloric contents is readily clarified by the back panel of the bars' packaging, which lists the amount of carbohydrates and calories in each bar."); *Warren v. Whole Foods Mkt. Grp., Inc.*, No. 19CV6448RPKLB, 2021 WL 5759702, at *6 (E.D.N.Y. Dec. 3, 2021) (holding that even if where there are multiple readings of an ambiguous term on a package label, "the ingredient label would set plaintiffs straight").

The Court finds Judge Furman's opinion in *Boswell v. Bimbo Bakeries USA, Inc.*, No. 20-CV-8923 (JMF), 2021 WL 5144552 (S.D.N.Y. Nov. 4, 2021) to be instructive.  In *Boswell*, the plaintiff asserted that an Entenmann's "All Butter Loaf Cake" product was deceptively labeled because the cake contained soybean oil and artificial flavors, in addition to butter.  *Id.* at *1.  The plaintiff asserted that a reasonable consumer would understand the "All Butter" description to mean that the product contained no butter alternatives.  *Id.* at *3.  Judge Furman rejected this argument, finding that the description "All Butter" was ambiguous as opposed to misleading because the term "All Butter" could be read to have multiple meanings.  *Id.*  It could mean either that only butter was used as a shortening ingredient in the cake, that no butter alternatives or substitutes were used in the product, or that the product was merely butter flavored.  *Id.*  Since the label was ambiguous, Judge Furman concluded that "reasonable consumers would need additional information to understand the meaning of 'All Butter' and 'would know exactly where to look to investigate — the ingredient list.'"  *Id.*  Judge Furman distinguished *Mantikas* because the label there was unambiguously misleading, *which could not be cured by the "small print" of the ingredients list.  *Id.* at *2.

The Court finds that the description "Smoked" as used on the product is not misleading but is instead ambiguous. As in *Boswell*, and unlike in *Mantikas*, the description "Smoked" is susceptible to multiple interpretations. As Plaintiff alleges, the label could be interpreted to mean that the almonds were subject to at least some smoking. (FAC ¶ 65). However, the term smoked could also be interpreted by a reasonable consumer to indicate the flavoring of the nuts. Indeed, Plaintiff's own FAC includes a picture of a competitor product that clearly uses the word "Smoked" to connote the flavor of a product as opposed to the method by which that product was prepared. (*See* FAC ¶ 16). Because the term "Smoked" on the packaging is ambiguous, a reasonable consumer would read the ingredients list in order to clarify his or her understanding of the label. *See Boswell*, 2021 WL 5144552, at *3. The ingredient list on Defendant's packaging is clear that the product was *not* subject to any smoking, but was instead *roasted* in oil and *flavored with* "Natural Smoke Flavor." (FAC ¶ 14). Therefore, the packaging on the product is not materially misleading and Plaintiff's claim cannot withstand Defendant's Motion to Dismiss.

Plaintiff also cites to *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562 (S.D.N.Y. 2021), in support of his argument that the product is deceptively labelled. In *Colpitts*, the plaintiff alleged that a packaging of almonds was misleadingly labelled because it used the word "Smokehouse," even though the almonds were not naturally smoked. *Id.* at 571. Judge Cronan denied the defendants Motion to Dismiss the plaintiff's GBL section 349 and 350 claims, holding that the Complaint plausibly alleged that a reasonable consumer would be misled by the product. *Id.* at 580. However, *Colpitts* undermines rather than reinforces Plaintiff's argument. In *Colpitts*, the packaging of almonds was labelled with the word "Smokehouse," not "Smoked." *Id.* at 581. The use of the word "Smokehouse" was key because "Smokehouse" is used

exclusively as a noun to "describe[] a physical structure where food is prepared through the process of using actual smoke . . . it is not also an adjective or otherwise a word commonly used to describe a flavor." *Id.* Conversely, here, the word "Smoked" *can* be interpreted in multiple ways because it can either denote the flavor of the product or the means by which the product was prepared. And, as Plaintiff himself alleges, other portions of the packaging at issue state clearly that the nuts were roasted (as opposed to smoked) and flavored with "Natural Smoke Flavor." (FAC ¶ 14).

The remainder of Plaintiff's allegations do not persuade the Court that the product's labelling is materially misleading. The FAC's allegations that consumers expect a product labeled "Smoked Almonds" to be flavored through at least some smoking (FAC ¶¶ 11, 15, 28, 48) are conclusory statements that the Court is not required to accept as true. *See Iqbal*, 556 U.S. at 678; *see also Dashnau*, 529 F. Supp. 3d at 242 (finding that "Plaintiffs' allegations that reasonable consumers would expect the Product 'to be flavored exclusively with real vanilla are conclusory statements that the Court is not required to accept.'" (quoting *Wynn*, 2021 WL 168541, at *3)). As in *Dashnau* and *Wynn*, Plaintiff provides no empirical basis to substantiate his assertion that reasonable consumers would interpret the product's label to imply smoking as a source of flavoring. *Dashnau*, 529 F. Supp. 3d at 242; *Wynn*, 2021 WL 168541, at *3 ("Plaintiffs do not attempt to marshal consumer survey data to support their allegation that reasonable customers interpret 'vanilla' to mean 'flavored with exclusively natural vanilla.'"); *cf. Twohig*, 519 F.Supp.3d at 163 (discussing, but disregarding, the results of a survey "designed at the behest of counsel who apparently has brought nearly 100 similar lawsuits challenging the labeling of vanilla flavored products," and concluding that the survey was "sufficiently flawed that it does not contribute enough to render the claims plausible"). Moreover, any such

conclusion is undermined by Plaintiff's own factual allegations that the packaging has other words (*e.g.*, "roasted" and "natural smoke flavor") that would render any such conclusion unreasonable.  (FAC ¶ 14).

Plaintiff points to a range of federal labeling regulations as evidence of what consumers should expect different types of labels to imply about the contents of their products.  (*See* FAC ¶¶ 9, 11, 12, 15, 17).  However, even if Plaintiff is correct about federal regulatory requirements, the FAC does not allege that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations. *See Dashnau*, 529 F. Supp. 3d at 242; *Steele*, 472 F.Supp.3d at 50 ("The point here is not conformity with this or that standard (which is left to the authorities to regulate) but whether the marketing presentation was deceptive."); *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (finding that a product's labeling was not likely misleading to consumers under the GBL even though its labeling violated FDA standards).[2]

At bottom, a Plaintiff must put forth facts that pushes his complaint across the line from possible to plausible.  *See Iqbal*, 556 U.S. at 680.  In the context of a claim under GBL sections 349 and 350, that means that Plaintiff must sufficiently plead that a products packaging is *misleading*.  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).  Plaintiff's allegations, even taken as true with all reasonable inferences drawn in his favor, at best plead that Defendant's packaging is ambiguous, not misleading.  The clear ingredients list on the back of the packaging makes clear that the nuts are roasted and are flavored with "natural smoke flavor," thereby dispelling any potential that the packaging could mislead a reasonable consumer into

---

[2] As Plaintiff concedes, he is not seeking to privately enforce the Federal Food, Drug, and Cosmetic Act (the "FDCA"), (Pl. Opp'n 5), nor could he do so if he wanted.  *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (no private right of action exists under the FDCA).

believing that the product here was subject to a smoking process.  As such, Plaintiff fails to state a claim under GBL sections 349 and 350 as a matter of law.

## II.     Plaintiff's Remaining Claims Fail As A Matter Of Law

Plaintiff's remaining claims — negligent misrepresentation, breaches of express warranty, the implied warranty of merchantability, and the Magnuson Moss Warranty Act, fraud, and unjust enrichment — are all also premised on the contention that Defendant's product is materially misleading.  Because the Court has already determined that Plaintiff has failed to allege that the product's labeling would be likely to deceive or mislead a reasonable consumer, these causes of action are also dismissed for the reasons already stated.  *See Barreto*, 518 F.Supp.3d at 806; *see also Cosgrove*, 2020 WL 7211218, at *3 (dismissing claims for negligent misrepresentation, breach of express warranty, breach of the implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, fraud, and unjust enrichment because, "if [the] [d]efendant's [p]roduct does not misrepresent the contents of the container as a matter of law, all of [the] [p]laintiffs' claims must be dismissed"); *Wynn*, 2021 WL 168541, at *6 ("[The] [p]laintiffs also assert claims for negligent misrepresentation, breach of warranty, fraud, and unjust enrichment. These claims, which largely hinge on the same theory of misleading business practices rejected by the [c]ourt above, all fail as a matter of law.").  Nonetheless, these claims fail as a matter of law for the following additional reasons.

### A.  Negligent Misrepresentation

To sufficiently plead a claim for negligent misrepresentation, a plaintiff must allege that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the

plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the

plaintiff reasonably relied on it to his or her detriment. *Anschutz Corp. v. Merrill Lynch & Co.,*

*Inc.*, 690 F.3d 98, 114 (2d Cir. 2012).  A special relationship exists if the defendant "possess[es]

unique or special expertise" or is "in a special position of confidence and trust with the injured

party such that reliance on the negligent misrepresentation is justified." *Sarr*, 2020 WL 729883,

at *6 (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180, 919 N.Y.S.2d 465,

944 N.E.2d 1104 (N.Y. 2011)).  The Second Circuit has further explained that where the

statement at issue is directed at a "faceless or unresolved class of persons," no duty of care

arises. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005) (quoting

*White v. Guarente*, 43 N.Y.2d 356, 361, 401 N.Y.S.2d 474, 372 N.E.2d 315 (N.Y. 1977)).  This

requirement carries extra weight in the commercial context, where a closer degree of trust

between the parties than that of the ordinary buyer and seller is required. *Colpitts*, 527 F. Supp.

3d at 587 (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, 14 Civ. 3826 (MKB), 2015 WL

5579872, at *24 (E.D.N.Y. Sept. 22, 2015)).

Plaintiff asserts that his negligent misrepresentation claim is viable because Defendant

had "special knowledge and experience" in the sale of consumer goods and "knew that

Plaintiff[s] would rely on those claims."  (FAC ¶ 71).  These allegations, however, fall short of

establishing a special relationship between Plaintiff and Defendant. *See*, *e.g.*, *Colpitts*, 527 F.

Supp. 3d at 587 (dismissing a negligent misrepresentation claim where Plaintiff merely alleged

that Defendant held "itself out as having special knowledge and experience" in the sale of the

product); *Twohig*, 519 F. Supp. 3d at 167 (finding that a similar allegation that the defendant

"held itself out as having special knowledge and experience in the production, service and/or sale

of the product type" was insufficient to adequately plead the existence of a special relationship);

*Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 684 (S.D.N.Y. 2021) (finding no special relationship where plaintiff "simply refers to one paragraph in his complaint where he alleges—in a conclusory manner—that Defendant 'held itself out as having special knowledge and experience in production, service, and/or sale of the product type'").  For this added reason, Plaintiff fails to state a claim for negligent representation.

### B.  Breach Of Express Warranty

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  N.Y. U.C.C. § 2-313(1)(a).  To adequately state a claim for breach of an express warranty, Plaintiff must plead (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach.  *CBS Inc. v. Ziff-Davis Pub. Co.*, 75 N.Y.2d 496, 502–04, 553 N.E.2d 997, 1001 (N.Y. 1990).  Under New York law, a plaintiff must also give notice of the breach to the seller before he can recover under an express warranty claim.  *See* N.Y. U.C.C. § 2-607(3)(a) ("[B]uyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach.").  The notice requirement applies to consumer fraud actions such as this one.  *See*, *e.g.*, *Campbell*, 516 F. Supp. 3d at 391; Lugones, 440 F. Supp. 3d at 244-45.

Plaintiff has failed to sufficiently plead the notice requirement.  His FAC merely alleges that he "provided or will provide notice to Defendant, its agents, representatives, and their employees," and that "Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product or those of the type described here."  (FAC ¶¶ 79, 80).

Plaintiff's FAC contains no facts with respect to any complaints made to Defendant about the product.  Moreover, Plaintiff's allegations are wholly equivocal and do not allege that notice has been provided.  *See Campbell*, 516 F. Supp. 3d at 391.  As was the case in *Campbell*, it is telling that Plaintiff does not allege that he provided notice.  Instead, he equivocates, pleading both that he did provide notice, and that he did not do so but will do so in the future.  (FAC ¶¶ 79, 80).  To state a claim, Plaintiff must allege that he provided notice.  If he had done so, he could surely have so pleaded.  *See Campbell*, 516 F. Supp. 3d at 391.  As such, Plaintiff fails to state a breach of express warranty claim.

### C.  Breach Of Implied Warranty Of Merchantability

A breach of the implied warranty of merchantability occurs when the product at issue is "unfit for the ordinary purposes for which such goods are used."  *Twohig*, 519 F.Supp.3d at 167 (citing U.C.C. § 2-314(c)); *Wynn*, 2021 WL 168541, at *7 ("Plaintiffs' claim for breach of implied warranty fails for the additional reason that there is no allegation that the almond milk was unfit for human consumption."); *Barreto*, 518 F.Supp.3d at 807 (dismissing claim for breach of implied warranty where there were "no allegations that the soymilk beverage was unfit for the ordinary purpose of such goods, namely, human consumption").  Here, Plaintiff's claim for breach of the implied warranty of merchantability fails because Plaintiff fails to allege that the product was unfit for human consumption.

Moreover, the U.C.C.'s notice requirement also applies to claims for breach of implied warranty.  *See*, *e.g.*, *Int'l Bhd. of Teamsters Local 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, No. 10-cv-1692 (RJD), 2012 WL 13202126, at *23 (E.D.N.Y. Apr. 19, 2012) (dismissing express and implied warranty claims for failure to plead that defendants were given timely notification of breach); *Hubbard v. Gen. Motors Corp.*, No. 95-cv-4362, 1996 WL

274018, at *4 (S.D.N.Y. May 22, 1996) (dismissing express and implied warranty claims under

Section 2-607(3) of the New York Uniform Commercial Code because the complaint "lacks any

allegation that plaintiff notified [the defendant]").  As discussed with respect to Plaintiff's

express warranty claim, *see* Part II.B. *supra*, Plaintiff has failed to plead the notice requirement.

For these additional reasons, Plaintiff fails to state a breach of implied warranty of

merchantability claim.

### D.  Magnuson Moss Warranty Act Claim

The MMWA makes a warrantor directly liable to a consumer for breach of a written

warranty.  *Wilbur v. Toyota Motor Sales*, 86 F.3d 23, 26 (2d Cir. 1996); 15 U.S.C. § 2310(d)(1).

The MMWA does not create additional bases for recovery under federal law, but rather allows a

consumer to recover damages under existing state law.  M*eserole v. Sony Corp. of Am.*, No. 08

CV. 8987 (RPP), 2009 WL 1403933, at *10 (S.D.N.Y. May 19, 2009) (citing *Diaz v. Paragon*

*Motors of Woodside*, 424 F.Supp.2d 519, 540 (E.D.N.Y. 2006)).  Because Plaintiff has not pled a

state law claim of express or implied warranty, his MMWA claim fails.

Moreover, Plaintiff has not alleged the existence of a written warranty within the

meaning of the MMWA.  Under the MMWA, a "written warranty" is defined in relevant part as:

> any written affirmation of fact or written promise made in
> connection with the sale of a consumer product by a supplier to a
> buyer which relates to the nature of the material or workmanship
> *and affirms or promises that such material or workmanship is defect*
> *free or will meet a specified level of performance over a specified*
> *period of time.*

*Campbell*, 516 F. Supp. 3d at 393 (quoting 15 U.S.C. § 2301(6)(A)) (emphasis in original).  A

product's packaging descriptions are not actionable warranties under the MMWA.  *Chufen Chen*

*v. Dunkin' Brands, Inc.*, No. 17CV3808CBARER, 2018 WL 9346682, at *6 (E.D.N.Y. Sept. 17,

2018), *aff'd*, 954 F.3d 492 (2d Cir. 2020) (holding that Defendant's use of the term "Angus beef"

15

was a product description, not a written warranty under the MMWA); *Campbell*, 516 F. Supp. 3d

at 393 ("The references on the packaging to 'honey' and 'graham' do not suggest that the

crackers are defect free or that they will meet a specified level of performance over a specified

period of time; instead, they simply describe the product.").  As such, Plaintiff fails to state a

MMWA claim.

### E.  Common Law Fraud

To state a claim for fraud under New York law, a plaintiff must allege "(1) a material

misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the

defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5)

which caused injury to the plaintiff."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d

395, 402–03 (2d Cir. 2015).  "A claim for common law fraud is subject to the particularity

requirements of Federal Rule of Civil Procedure 9(b)."  *Id.* at 402–03.  Rule 9(b) requires that the

complaint "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).

Plaintiff's only allegation on this issue is that "Defendant's fraudulent intent is evinced

by its failure to accurately identify the Product on the front label, when it knew its statements

were not true nor accurate."  (FAC ¶ 86).  Courts in this District regularly reject this exact

language as insufficient to allege fraudulent intent.  *See*, *e.g.*, *Twohig*, 519 F. Supp. 3d at 166

("Plaintiffs' fraud claim is separately dismissed because . . . [t]he complaint only contains the

conclusory allegation that 'Defendant's fraudulent intent is evinced by its failure to accurately

identify the Product on the front label and ingredient list, when it knew its statements were

neither true nor accurate and misled consumers.'"); *Campbell*, 516 F. Supp. 3d at 391

(dismissing fraud claim where "Plaintiff's only allegation about Defendant's intent is that

Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the

front label when it knew this was not true") (internal quotation marks omitted).  Plaintiff fails to state a common law fraud claim under New York law.

### F.  Unjust Enrichment

To sufficiently plead unjust enrichment, a plaintiff must allege that "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) . . . it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff."  *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (citation omitted).  An unjust enrichment claim cannot survive "where it simply duplicates, or replaces, a conventional contract or tort claim."  *Id.* (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (N.Y. 2012)).  If "the unjust enrichment claim is duplicative," and "if plaintiff['s] other claims are defective, an unjust enrichment claim cannot remedy the defects."  *Corsello*, 18 N.Y.3d at 791.

Plaintiff's unjust enrichment claim must be dismissed because it merely duplicates his other claims.  The Complaint devotes two sentences to the unjust enrichment claim: "incorporat[ing] by reference all preceding paragraphs" and then stating that Defendant received profits to the "detriment and impoverishment of plaintiff and class members."  (FAC ¶¶ 89–90).  These allegations are insufficient to state a claim for unjust enrichment.  *See, e.g.*, *Colpitts*, 527 F. Supp. 3d at 592 (dismissing plaintiff's unjust enrichment claims based on identical allegations because "Plaintiff's unjust enrichment claim . . . merely duplicates his other claims."); *Sitt v. Nature's Bounty, Inc.*, No. 15 Civ. 4199 (MKB), 2016 WL 5372794, at *18 (E.D.N.Y. Sept. 26, 2016) (same).  Plaintiff fails to state an unjust enrichment claim under New York law.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss [ECF No. 19] is GRANTED.

Defendant's request for oral argument [ECF No. 27] is DENIED.

The Clerk of Court is respectfully requested to terminate docket entries 19 and 27 and to

close this case.


**SO ORDERED.**

**Date:   March 21, 2022**
**New York, NY**                                    _____
                                                              **MARY KAY VYSKOCIL**
                                                            **United States District Judge**